# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff. | |
| v. | Criminal Case No. 12-00022 (BAH) |
| | Judge Beryl A. Howell |
| RONALD WILLIAMS and MAURICE WILLIAMS, | |
| Defendants. | |

## <u>MEMORANDUM OPINION</u>

Pending before the Court following a suppression hearing held on July 3, 2012 are three

Motions to Suppress by defendant Maurice Williams: (1) a Motion to Suppress physical

evidence seized from the automobile defendant Maurice Williams was driving on October 21,

2011, *see* ECF No. 22; (2) a Motion to Suppress physical evidence seized from the automobile

for which defendant Maurice Williams had the keys on February 1, 2012, *see* ECF No. 42; and

(3) an oral Motion to Suppress, stated on the record at the hearing held on July 3, 2012,

regarding a single statement that defendant Maurice Williams allegedly made at the police

station on February 1, 2012 that he got "dropped off" at the police station.  *See* Suppression Hr'g

Transcript, July 3, 2012 ("Tr"), at 93, line 25; *id*. at 94, lines 1-2.  Also pending before the Court

is a related Motion to Admit Other Crimes Evidence Pursuant to Federal Rule of Evidence

404(b), filed by the United States.  *See* ECF No. 34.[1]  Following a hearing on these motions, and

an examination of the entire record and applicable law, the Court, for the reasons explained

---

[1] At the hearing held on July 3, 2012, the Court granted in part and reserved in part this motion.  Specifically, for the reasons explained on the record, the Court granted the government's motion with respect to the 404(b) evidence related to Ronald Williams and reserved judgment on the evidence related to Maurice Williams pending a decision on defendant Maurice Williams' Motion to Suppress evidence seized from a car on February 1, 2012.

below, will DENY the Motions to Suppress physical evidence seized on October 21, 2011 and

February 1, 2012, ECF Nos. 22, 42; GRANT the Motion to Suppress the single statement

defendant Maurice Williams allegedly made at the police station that he got "dropped off" at the

station; and GRANT the government's Motion to Admit Other Crimes Evidence Pursuant to

Federal Rule of Evidence 404(b), ECF No. 34, with respect to Maurice Williams.

## I.    BACKGROUND

### A.    Procedural History

Defendant Maurice Williams, along with his brother, Ronald Williams, was indicted on

January 26, 2012, and is charged in four counts of the six count indictment.  Specifically,

defendant Maurice Williams is charged with conspiring, between September 16, 2011 and

October 21, 2011, to Distribute and Possess with Intent to Distribute Cocaine, Cocaine Base,

and Marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) (Count One); Unlawful

Possession with Intent to Distribute Cocaine, on or about October 21, 2011, in violation of 21

U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count Four); Unlawful Possession with Intent to Distribute

28 Grams or More of Cocaine Base, on or about October 21, 2011, in violation of 21 U.S.C. §§

841(a)(1) and (b)(1)(B)(iii) (Count Five); and Simple Possession of a Controlled Substance, on

or about October 21, 2011, in violation of 21 U.S.C. § 844(a) (Count Six).

On July 3, 2012, the Court held a suppression hearing to hear argument and testimony on

six motions pending before the Court.  Two witnesses testified: Metropolitan Police Department

(MPD) Officer Kenneth Thompkins and defendant Maurice Williams.  For the reasons stated on

the record on July 3, 2012, the Court denied the Motion to Suppress Physical Evidence filed by

Ronald Williams, ECF No. 28; denied the Motion to Sever Co-Defendant filed by Ronald

Williams, ECF No. 29; denied the Motion to Preserve Electronic Communications filed by

Maurice Williams, ECF No. 24; and granted in part and reserved in part the government's

Motion to Admit Other Crimes Evidence Pursuant to Federal Rule of Evidence 404(b), ECF No.

34, granting the government's motion as to the introduction of evidence of two prior convictions

of Ronald Williams and reserving decision as to the government's motion to introduce

uncharged criminal conduct of Maurice Williams.  The Court also reserved judgment on

defendant Maurice Williams' three Motions to Suppress, which are now before the Court.

      **B.**    **Factual Background**

    Based on the testimony presented at the hearing on July 3, 2012, the Court sets forth the

following factual background related to the pending suppression motions, beginning with the

police surveillance of the defendants' house on September 16, 2011, which is probative of the

probable cause for the search of defendant Maurice Williams' car a month later.

    On September 16, 2011, officers of the MPD conducted surveillance of 5318 9th Street

NW based on complaints from a citizen, lodged in August 2011, about narcotics trafficking

activity.  Tr. at 9, lines 3-4; *id.* at 11, lines 10-11; *id.* at 69, lines 1-6.  Officer Thompkins

testified to three separate transactions witnessed by an undercover officer that occurred on that

date.  *Id.* at 11, lines 16-25; *id.* at 12, lines 1-13.  The first involved a black male who was

observed driving to and approaching 5318 9th Street NW, where he was met on the porch by

Ronald Williams.  *Id.* at 32, lines 6-9; *id.* at 33, lines 11-20.  He spoke with Ronald Williams,

then both men entered the house for approximately a minute, and the man then left in his vehicle.

*Id.* at 33, lines 11-20.  The second transaction involved a black male who approached the house

on foot.  *Id.* at 33, lines 22-24.  After a brief conversation with Ronald Williams, this man left the

location walking southbound.  *Id.*  A third individual similarly walked to the house, had a brief

conversation with Ronald Williams, and left walking southbound.  *Id.* at 33, lines 24-25; *id*. at 34, lines 1-2.

The undercover officer broadcast "lookouts" for all three men to arrest teams.  *Id.* at 32, lines 13-15.  The first two men who left the house were separately stopped by police and found to be in possession of cocaine and crack cocaine.[2]  *Id.* at 12, lines 10-13.  When the arrest team approached the third man who left the house, he swallowed "the narcotics" and the police were unable to recover them.  *Id.* at 12, lines 11-17.

On October 21, 2011, MPD officers conducted further surveillance on 5318 9th Street NW.  *Id.* at 8, lines 16-23.  Officer Thompkins testified that he observed defendant Maurice Williams enter a white Chevrolet Traverse, which was parked in front of the house, and drive away from the house without putting on a seatbelt.  *Id.* at 10, lines 2-5; *id*. at 10; lines 23-24; *id*. at 43, line 14.  At this point, Officer Thompkins did not know who Maurice Williams was, suspecting only that he was another "drug customer."  *Id.* at 10, lines 2-18.  Officers followed the vehicle, *id.* at 10, lines 23-25, and Officer Thompkins observed Maurice Williams repeatedly looking in his rearview mirror to watch the police car following him, *id.* at 14, lines 4-5.  At some point while he was being followed, Maurice Williams stopped on the side of the road, allowing Officer Thompkins' vehicle to pass him.  *Id.* at 14, lines 5-6, *id*. at 49, lines 3-7; *see also id*. at 78, lines 22-25 (M. Williams testimony).

Officer Thompkins made a traffic stop of Maurice Williams in the 6300 block of Georgia Avenue NW.  *Id.* at 14, lines 9-10; *id*. at 45, lines 23-25.  As he approached the vehicle, Officer Thompkins saw Maurice Williams place objects from his jacket into the center console and smelled the odor of fresh marijuana.  *Id.* at 14, lines 16-18; *id*. at 15, lines 21-23.  Officer Thompkins asked Maurice Williams for his driver's license and registration, and Maurice

---

[2] Officer Thompkins's testimony does not specify which man possessed which drug.  *Id.* at 12, lines 10-13.

Williams responded that he did not have his license with him and that the vehicle was a rental. *Id.* at 16, lines 4-7.  At this point, Officer Thompkins instructed Maurice Williams to exit his vehicle while he checked the defendant's driver's license status.  *Id.* at 16, lines 7-10.  Officer Thompkins learned that Maurice Williams' license had expired on July 23, 2011. *Id.* at 16, lines 12-13.  Maurice Williams was then placed under arrest for driving without a permit.  *Id.* at 16, lines 14-16.  A subsequent search of the vehicle revealed, in the center console, 125 grams of cocaine and 4 grams of marijuana.  *Id.* at 16, lines 18-20.

Maurice Williams' account of these events differs in two key respects.  Most importantly, he contends that he was wearing a seatbelt on October 21, 2011 when he was followed and arrested by Officer Thompkins.  *Id.* at 76, lines 3-9.  Maurice Williams testified that on October 21, 2011, he noticed Officer Thompkins' unmarked police car start following him a block away from 5318 9th Street NW, *id.* at 76, lines 12-15, and recognized it as a police vehicle, *id.* at 78, lines 1-12.  Unsure why he was being followed, Maurice Williams pulled over after driving northbound on Georgia Avenue for several blocks.  *Id.* at 78, lines 22-25; *id.* at 80, lines 11-14. Maurice Williams testified further that he lifted up his seatbelt strap to demonstrate that he was wearing a seatbelt as Officer Thompkins drove past.  *Id.* at 80, lines 11-14.

The second important difference in the testimony is that Maurice Williams testified that, on October 21, 2011, he first noticed Officer Thompkins' unmarked police car following him a block away from 5318 9th Street NW, *id.* at 76, lines 13-15, thereby calling into question whether, given the position of the police car, the officer would have been able to see whether Williams fastened his seatbelt when he entered the car, *id.* at 90, lines 5-10.  The testimony indicates, however, only that Maurice Williams first noticed the police car when he was a block

from his house, not that the police car was parked at that location when surveillance of him was initiated. *See id.*

Following the arrest of Maurice Williams, police applied for and received an emergency search warrant for 5318 9th Street NW. *Id.* at 18, lines 12-16. The warrant was executed the same day as Maurice Williams' arrest, resulting in the recovery of narcotics and drug paraphernalia from 5318 9th Street NW. *Id.* at 19, lines 23-25; *id.* at 20, lines 1-2. Ronald and Maurice Williams were subsequently indicted and bench warrants were issued for their arrest. *Id.* at 20, lines 3-7.

On February 1, 2012, defendant Ronald Williams was arrested pursuant to that bench warrant. *Id.* at 20, lines 8-19. That same evening, Officer Thompkins called defendant Maurice Williams, and, as a "ruse" to get him to come to the Fourth District police station, asked him to come retrieve his brother Ronald's personal items. *Id.* at 20, lines 16-22. When he arrived at the station, Maurice Williams was arrested on the outstanding bench warrant. *Id.* at 20, lines 23-25. Officer Thompkins asked Maurice Williams how he had gotten to the police station, and Maurice Williams replied that he had been "dropped off." *Id.* at 21, lines 3-4. When Officer Thompkins pressed the key fob taken from Maurice Williams after the arrest, however, the lights flashed on a blue sedan parked directly outside the station. *Id.* at 21, lines 2-7; *id.* at 30, lines 3-5. Officer Thompkins approached the car, noticed the passenger window was down, and smelled fresh marijuana through the open window. *Id.* at 22, lines 12-14. A canine unit was contacted, and a trained drug-sniffing dog alerted to Maurice Williams' vehicle. *Id.* at 22, lines 14-20. A subsequent search of the vehicle yielded crack cocaine in the driver's door handle and "a large amount of fresh marijuana" in the center console. *Id.* at 23, lines 1-3. Additionally, behind the sun visor, police found court paperwork in Maurice Williams' name. *Id.* at 23, lines 7-11.

## II.      STANDARD OF REVIEW

The Fourth Amendment prohibits law enforcement from conducting "unreasonable searches and seizures," and "this protection extends to a brief investigatory stop of persons or vehicles, whether or not an arrest follows." *United States v. Bailey*, 622 F.3d 1, 5 (D.C. Cir. 2010) (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *Terry v. Ohio*, 392 U.S. 1, 9 (1968); and *United States v. Cortez,* 449 U.S. 411, 417 (1981)).  Generally, "searches must be supported by a warrant obtainable upon a showing of probable cause." *United States v. Jackson*, 415 F.3d 88, 91 (D.C. Cir. 2005).  Searches that are conducted without prior approval by a judge "'are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.'" *Id.* (quoting *California v. Acevedo,* 500 U.S. 565, 580 (1991)).  For example, police officers may stop a vehicle and its occupants without a warrant when they have probable cause to believe a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996).  Officers may also briefly detain a person without a warrant in a *Terry* stop if they have a "reasonable, articulable suspicion that 'criminal activity may be afoot.'" *United States v. Edmonds*, 240 F.3d 55, 59 (D.C. Cir. 2001) (quoting *Terry v. Ohio*, 392 U.S. at 30).  A *Terry* stop requires only a "minimal level of objective justification." *INS v. Delgado*, 466 U.S. 210, 217 (1984).  Moreover, the "automobile exception" allows a warrantless search of a vehicle if police officers have probable cause to believe the vehicle contains evidence of a crime. *United States v. Maynard*, 615 F.3d 544, 567 (D.C. Cir. 2010)

To prevail on a motion to suppress evidence due to a Fourth Amendment violation, a defendant must first establish standing, i.e., "that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 132 n.1 (1978). That is not at issue in this case.  When a defendant establishes that he was arrested or subjected

to a search without a warrant, the burden then shifts to the government to justify the warrantless search. *See Mincey v. Arizona*, 437 U.S. 385, 390-91 (1978); *United States v. Jeffers*, 342 U.S. 48, 51 (1951) ("[T]he burden is on those seeking the exemption to show the need for it . . . ."); *United States v Brown*, 334 F.3d 1161, 1182 (D.C. Cir. 2003) (Rogers, J., dissenting) ("The government bears the burden of proof, and under *Terry*, the government must present evidence that the police officer was able to articulate the specific facts that caused him to view [the defendant] as a likely suspect . . . ."); *United States v. Mangum*, 100 F.3d 164, 169 (D.C. Cir. 1996) ("The government carries the burden of showing that the measures employed during the stop were justified.");  *United States v. Jones*, 374 F. Supp. 2d 143, 147 (D.D.C. 2005); s*ee also United States v. Albert*, 579 F.3d 1188, 1193 (10th Cir. 2009) ("The government has the burden of demonstrating the officers' conduct satisfies *Terry*."); *United States v. Torres-Ramos*, 536 F.3d 542, 552 (6th Cir. 2008) ("The government bears the burden of proving, by a preponderance of the evidence, the existence of reasonable suspicion to believe - based upon objective and articulable facts - that the defendants were engaged in criminal activity."); *United States v. Jaquez*, 421 F.3d 338, 341 (5th Cir. 2005) ("The government bears the burden of showing the reasonableness of a warrantless search or seizure."); *United States v. Longmire*, 761 F.2d 411, 417 (7th Cir. 1985) ("To require the defendant to prove the absence of a reasonable suspicion without knowledge of the facts upon which the police based their assessment of the existence of a reasonable suspicion is to place upon him an impossible burden.").

With respect to the first Motion to Suppress physical evidence seized from Maurice Williams' vehicle on October 21, 2011, the government must demonstrate, by a preponderance of the evidence, the legality of both (1) the officer's initial traffic stop of the defendant, and (2) the subsequent search of the vehicle.  With respect to the second Motion to Suppress physical

evidence seized from Maurice Williams' vehicle on February 1, 2012, the government must demonstrate, by a preponderance of the evidence, that the officers had probable cause for the warrantless search.

With respect to the Motion to Suppress a statement, the defendant must show that the requirements of *Miranda v. Arizona,* 384 U.S. 436 (1966), apply, namely that there was a custodial interrogation.  *United States v. Vinton*, 594 F.3d 14, 26-27 (D.C. Cir. 2010).

## III.   DISCUSSION

As noted, defendant Maurice Williams has three pending motions to suppress evidence seized from two different vehicles on two separate occasions as well as a statement he allegedly made at the police station.  First, he seeks to suppress marijuana and cocaine seized from the vehicle he was driving on October 21, 2011 because he alleges the traffic stop was unlawful. Def.'s Mot. to Suppress, ECF No. 22.  Second, he seeks to suppress marijuana and cocaine seized from his vehicle on February 1, 2012 because he alleges the search was conducted without his consent or a probable cause warrant.  Def.'s Mot. to Suppress, ECF No. 42.  Third, as stated on the record at the suppression hearing held on July 3, 2012, he seeks to suppress a single statement that he allegedly made at the police station on February 1, 2012 that he got "dropped off" at the police station because this statement was made before he was read his *Miranda* rights.[3]  The Court addresses each of these motions separately below, as well as the government's pending Motion to Admit Other Crimes Evidence Pursuant to Federal Rule of Evidence 404(b) with respect to Maurice Williams.  *See* ECF No. 34.

---

[3] In addition to the challenged statement, defendant Maurice Williams made statements (1) during a videotaped interview after his arrest, and (2) regarding the fact that the vehicle he was driving on October 21, 2011 was rented for him by his aunt.  He has made no motion to suppress those statements.  Tr. at 94, lines 12-25; *id*. at 95, lines 1-13.

A.        **Motion to Suppress Evidence from Automobile Search on October 21, 2011**

The Court will first address defendant Maurice Williams' motion to suppress marijuana and cocaine seized from the vehicle he was driving on October 21, 2011. Defendant Maurice Williams alleges that the traffic stop was unlawful. Def.'s Mot. to Suppress, ECF No. 22. The Court disagrees.

1.        **Legality of the October 21, 2011 Traffic Stop**

The government contends that the officers stopped Maurice Williams' vehicle because they witnessed the defendant "enter the driver's side of a white Chevrolet Traverse and pull off without utilizing his seatbelt." Gov't's Resp. to Def. Maurice Williams' Mot. to Suppress, ECF No. 36, at 2. When evaluating the reasonableness of a traffic stop, courts only examine whether the stop was objectively reasonable; subjective intent of the officer plays no role in the analysis. *See Whren*, 517 U.S. at 814. Thus, when officers observe a traffic violation, stopping the vehicle is objectively reasonable, and therefore does not violate the Fourth Amendment. *See United States v. Mitchell*, 951 F.2d 1291, 1295 (D.C. Cir. 1991).

A traffic stop that is supported by objectively reasonable circumstances is legal even if the stop was "a mere pretext for a search." *Mitchell*, 951 F.2d at 1295; *see also Arkansas v. Sullivan*, 532 U.S. 769, 772 (2001) (so long as arrest is supported by probable cause, Fourth Amendment is not violated even if officer had pretextual subjective motive for stopping driver for speeding); *United States v. Walters*, 361 F. App'x 153, 153 (D.C. Cir. 2009) (per curiam) ("[A] stop is reasonable under the Fourth Amendment so long as the police have probable cause to believe that a traffic violation has occurred, regardless of the officers' actual motivations for the stop."); *United States v. Bookhardt*, 277 F.3d 558, 565 (D.C. Cir. 2002) (even if a stop is a pretext for a search, officer's subjective intent is irrelevant so long as there was probable cause to

believe driver had committed traffic violation).  For example, in *Whren*, the Supreme Court

upheld a traffic stop conducted after officers observed the defendants' truck stopped at an

intersection "for what seemed an unusually long time – more than 20 seconds, . . . [then turn]

suddenly to its right, without signaling, and [speed] off at an unreasonable speed."  517 U.S. at

808 (internal quotation marks omitted).  The Court stated that probable cause existed for the

traffic stop because the defendants were stopped for legitimate traffic violations.  *Id.* at 810.

Additionally, the Court rejected the defendant's contention that subjective intentions of law

enforcement should play a role in the Fourth Amendment search analysis.  *Id.* at 813.

Similarly, in *United States v. Davis*, 905 F. Supp. 16 (D.D.C. 1995), the court denied the

defendant's motion to suppress evidence after the vehicle in which he was travelling was initially

pulled over for failing to stop at a stop sign, even where the police officer expressly stated the

stop was pretextual.  Specifically, the police officer testified that because of the high drug crime

in the neighborhood where the car was stopped, the officer "tries to search a car whenever he

can."  *Id.* at 17.  In denying the defendant's motion, the court stated that "[i]t is the law of this

Circuit that, even if the stop is a pretext for a search, 'that does not mean that a violation of the

Fourth Amendment occurred.  It is well settled that a court must look to objective circumstances

in determining the legitimacy of police conduct under the Fourth Amendment, rather than an

officer's state of mind.'"  *Id.* at 18 (quoting *Mitchell*, 951 F.2d at 1295).

Furthermore, the D.C. Circuit has previously found no constitutional defect in traffic

stops conducted for relatively minor offenses.  *See, e.g., Vinton*, 594 F.3d at 20 ("[I]t is clear that

[the defendant] was properly stopped because [the officer's] firsthand observations gave him

probable cause to believe that Vinton had been speeding and driving with windows tinted in

excess of the legal limit."); *United States v. Draine*, No. 92-3256, 1995 U.S. App. LEXIS 2408,

at *2 (D.C. Cir. 1995) (per curiam) ("The stop of appellant's car was justified based on the officers' objectively reasonable belief that appellant's failure to display a license tag on his front bumper, as well as the heavy tint on all of the vehicle's side windows, were violations of District of Columbia traffic regulations."); *United States v. Walters,* 563 F. Supp. 2d 45, 49 (D.D.C. 2008) (finding an objectively reasonable basis for traffic stop when officer believed vehicle had excessive window tint), *affirmed*, 361 F. App'x 153 (D.C. Cir. 2009) (per curiam); *United States v. Cogdell*, 297 F. Supp. 2d 11, 13 (D.D.C. 2003) (traffic stop was valid when a D.C. police officer was objectively reasonable in believing that the defendant's vehicle, which had Maryland plates, did not have a license plate attached to the front of his car as required under Maryland law). Indeed, "even a relatively minor offense that would not of itself lead to an arrest can provide a basis for a stop for questioning and inspection of the driver's permit and registration." *Mitchell,* 951 F.2d at 1295 (upholding traffic stop where defendant was speeding and failed to signal before making a turn off a street, stating that "[t]he Fourth Amendment does not bar the police from stopping and questioning motorists when they witness or suspect a violation of traffic laws, even if the offense is a minor one.").

If an officer is mistaken as to a fact, but his mistake was objectively reasonable, courts have generally concluded that the stop itself is reasonable.[4] *See, e.g., Booker*, 496 F.3d at 721

---

[4] By contrast, a number of Circuit Courts of Appeals, including the D.C. Circuit, have held that an officer's mistake of law generally cannot provide the objective grounds for reasonable suspicion or probable cause required to justify a traffic stop, unless an objectively valid basis for the stop nonetheless exists. *See United States v. Booker*, 496 F.3d 717, 722 (D.C. Cir. 2007) ("A stop is lawful despite a mistake of law, however, if an objectively valid basis for the stop nonetheless exists.") (citing *United States v. Southerland,* 486 F.3d 1355 (D.C. Cir. 2007)), *judgment vacated on other grounds*, 129 S. Ct. 2155 (2009); *see also United States v. Lopez-Valdez*, 178 F.3d 282, 289 (5th Cir. 1999) ("[I]f officers are allowed to stop vehicles based upon their subjective belief that traffic laws have been violated even where no such violation has, in fact, occurred, the potential for abuse of traffic infractions as pretext for effecting stops seems boundless and the costs to privacy rights excessive."); *United States v. Miller*, 146 F.3d 274, 279 (5th Cir. 1998) (finding "no objective basis for probable cause justified the stop" where officer was mistaken about law); *United States v. McDonald*, 453 F.3d 958, 961 (7th Cir. 2006) ("We agree with the majority of circuits to have considered the issue that a police officer's mistake of law cannot support probable cause to conduct a stop."); *United States v. Twilley*, 222 F.3d 1092, 1096 (9th Cir. 2000) ("[I]n this circuit, a belief based on a mistaken understanding of the law cannot constitute the reasonable suspicion required for a constitutional traffic stop.");

("A finding of reasonable suspicion does not demand a meticulously accurate appraisal of the facts. Indeed, [s]tops premised on mistakes of fact . . . generally have been held constitutional so long as the mistake is objectively reasonable.") (internal quotation marks and citations omitted), *judgment vacated on other grounds,* 129 S. Ct. 2155 (2009); *United States v. Payne*, 534 F.3d 948, 951 (8th Cir. 2008) (an officer's mistaken belief that the suspect's car lacked a front license plate was an objectively reasonable mistake of fact that supported probable cause for traffic stop); *United States v. DeGasso*, 369 F.3d 1139, 1144 (10th Cir. 2004) ("An officer's reasonable mistake of fact, as distinguished from a mistake of law, may support the probable cause or reasonable suspicion necessary to justify a traffic stop."); *United States v. Chanthasouxat*, 342 F.3d 1271, 1276 (11th Cir. 2003) ("Thus, if an officer makes a traffic stop based on a mistake of fact, the only question is whether his mistake of fact was reasonable. Great deference is given to the judgment of trained law enforcement officers on the scene.") (internal quotation marks and citations omitted). Thus, a traffic stop based on an officer's incorrect but reasonable assessment of facts does not violate the Fourth Amendment. *Saucier v. Katz*, 533 U.S. 194, 205 (2001). The only question is whether the officer's mistake of fact was reasonable, with great deference given to the judgment of trained law enforcement officers "on the scene." *See id.* at 205-206.

The case of *United States v. Hill*, 131 F.3d 1056 (D.C. Cir. 1997), is instructive on this point. There, the defendants were initially stopped because the officer believed that their vehicle did not have a Vehicle Identification Number (VIN) on the vehicle's temporary tags. Although

---

*United States v. Tibbetts*, 396 F.3d 1132, 1138 (10th Cir. 2005) ("[F]ailure to understand the law by the very person charged with enforcing it is not objectively reasonable."); *United States v. Chanthasouxat*, 342 F.3d 1271, 1279 (11th Cir. 2003) ("[T]he correct question is whether a mistake of law, no matter how reasonable or understandable, can provide the objectively reasonable grounds for reasonable suspicion or probable cause. And to that question we join the Fifth and Ninth Circuits in holding that a mistake of law cannot provide reasonable suspicion or probable cause to justify a traffic stop."). *But see United States v. Washington*, 455 F.3d 824, 827 (8th Cir. 2006) ("In our circuit, if an officer makes a traffic stop based on a mistake of law, the legal determination of whether probable cause or reasonable suspicion existed for the stop is judged by whether the mistake of law was an 'objectively reasonable one.'") (citation omitted).

evidence established that the temporary tags did have the VIN, the district court denied the

defendants' motion to suppress after concluding that the officer subjectively believed that the

defendant had violated a traffic law.  The D.C. Circuit remanded the case because the district

court did not determine whether it was objectively reasonable for the officer to believe that a

traffic violation occurred, namely that the tag did not have a VIN.  *Id.* at 1059.  The D.C. Circuit

noted, however, that "[i]f the district court concludes that under the circumstances it was

objectively reasonable for the police to believe that the car did not have a VIN on its temporary

tags, we agree with the government that the absence of the VIN did 'warrant a man of reasonable

caution in the belief' that a traffic stop was justified." *Id.* at 1061 (quoting *Terry*, 392 U.S. at

22).  The Court noted that "the record before us contains no information regarding the conditions

under which the officer first observed Hill's car e.g., how far away the police cruiser was from

Hill's car at the time the officer first observed the tags, the quality of the lighting, how quickly

Hill's car was moving, etc. and whether, given those conditions, it was objectively reasonable for

the officer to conclude that the tags were missing a VIN." *Id.* at 1060.

Turning to the objective circumstances leading to the traffic stop in this case, the officers

stopped defendant Maurice Williams for violating Washington, D.C.'s seatbelt law.  There is no

question that this violation would provide probable cause for the initial stop.  Further, once the

vehicle was stopped for an alleged traffic violation, officers ordered the defendant out of the car

and discovered that he was driving without a valid license, which constitutes another traffic

violation and one that the defendant does not contest.  *See* Tr. at 16, lines 4-16.  Pursuant to

*Pennsylvania v. Mimms,* 434 U.S. 106, 111 n.6 (1977), "once a motor vehicle has been lawfully

detained for a traffic violation, the police officers may order the driver to get out of the vehicle

without violating the Fourth Amendment's proscription of unreasonable searches and seizures."

Were there agreement that Maurice Williams was not wearing a seatbelt on October 21, 2011, the Court's analysis as to whether the initial stop was legal would end there.  Maurice Williams disputes this key fact, however, and testified that he was wearing his seatbelt.  While Officer Thompkins testified that he pulled over Maurice Williams because he was not wearing his seatbelt, defendant Maurice Williams testified convincingly at the suppression hearing that he was wearing a seatbelt at the time he was stopped.  *See* Tr. at 75, lines 15-25; *id*. at 76, lines 1-9.  Defendant Maurice Williams recounted that he was in an unrelated automobile accident on February 2, 2010 and was told after the accident that wearing his seatbelt on that occasion had saved his life.  *Id.* at 75, lines 15-22.  Defendant Maurice Williams thus testified, "I always wear my seatbelt."  *Id.* at 75, line 22.  The Court finds defendant Maurice Williams' testimony on this issue credible.

On the other hand, Officer Thompkins apparently believed that he saw Maurice Williams driving without his seatbelt fastened.  Indeed, the P.D. 163 form ("Arrest/Prosecution Report"), which was filled out on October 21, 2011, expressly states that Maurice Williams was observed failing to utilize his seatbelt and that the defendant was issued a citation "for Seat Belt Violation."[5]  Def.'s Ex. 3, at 2.   Officer Thompkins testified on cross-examination that he was unable to recall precisely where he was parked or how far away he was when he witnessed Maurice Williams enter the white Chevrolet Traverse.  Tr. at 41, lines 22-25; *id*. at 42, lines 1-2.  Nor could he recall the color of the defendant's clothing, the interior of the car or whether these colors were contrasting, which may have made it easier to see whether the seatbelt was fastened.

---

[5] Defendant Maurice Williams attempted to impugn Officer Thompkins' testimony based on the P.D. 163 form, pointing to the fact that it says Officer Thompkins was "on patrol" rather than that he was conducting surveillance of 5318 9th Street NW.  *See, e.g.*, Tr. at 115, lines 21-25; *id*. at 116, lines 1-6; *id*. at 51, lines 2-25; *id*. at 52, lines 1-6.  As Officer Thompkins explained, it is routine police practice to limit these reports to the basics so as to avoid compromising ongoing investigations.  *Id.* at 62, lines 19-25; *id*. at 63, lines 1-6.  The fact that the PD 163 says "[w]hile on routine patrol" rather than "while on surveillance" is not of any probative value in assessing the veracity or accuracy of Officer Thompkins' testimony.

*See id*. at 48, lines 16-23.   Nevertheless, the officer was unswerving in his affirmation that, through the back tinted window of the car, he could see that the defendant did not fasten his seatbelt.   A photograph of the white Chevrolet Traverse that was taken on the date of the search shows that the tint on the back window is not so dark as to block the view of the inside of the vehicle.   Gov't's Ex. 5.   Officer Thompkins also pointed out that he had the opportunity to pull alongside the Traverse, when Maurice Williams stopped on Georgia Avenue to let the police car pass him, and confirmed his belief that Maurice Williams was still not wearing a seatbelt.   Tr. at 44, lines 23-24; *id*. at 48, lines 7-10.   Maurice Williams' testimony confirmed this instance when the police car passed him.   *Id.* at 78, lines 24-25; *id*. at 79, lines 1-2; *id*. at 80, lines 11-14.   The Court is satisfied that Officer Thompkins also testified credibly.

The Court is thus presented with directly conflicting testimony about whether Maurice Williams was wearing his seatbelt, which is the crucial violation that prompted the challenged traffic stop by the police.   In resolving this conflict, the Court considered the demeanor of both witnesses and found them both to be credible.   Under the circumstances, even if Maurice Williams were wearing his seatbelt, the Court finds that Officer Thompkins was objectively reasonable in his belief that the defendant committed a traffic violation by driving without a seatbelt.   Unlike in *Hill*, where the Court relied solely on the officer's assertion that he believed the defendant's temporary tags lacked the VIN number, in the instant case, Officer Thompkins' testimony that he had a clear view, could see through the tinted window of defendant Maurice Williams' vehicle because it was a sunny day, and the officer's opportunity to confirm his belief that the defendant was not wearing a seatbelt when the defendant was stopped at the side of Georgia Avenue, combine to make the officer's belief objectively reasonable.   *See Hill*, 131 F.3d at 1060.   Crediting defendant Maurice Williams' testimony as true, the hearing established no

explanation for Officer Thompkins' otherwise mistaken factual assessment that the defendant

was not wearing his seatbelt, other than the possibility that the tinted back window, combined

with the lack of color differentiation between the seatbelt and the defendant's shirt, made it

appear as if the seatbelt were unfastened.  As in *Whren*, even if Officer Thompkins were

mistaken about the seatbelt being unfastened, it was objectively reasonable, even if mistaken, for

him to believe a traffic violation had occurred and, therefore, the stop of Maurice Williams'

vehicle was valid under the Fourth Amendment.  *See* 517 U.S. at 810.

      Alternatively, putting aside the issue of whether Officer Thompkins' observations about

Maurice Williams wearing his seatbelt were incorrect, the Court finds that the officers had

sufficient reasonable, articulable suspicion that this defendant might be involved in criminal

activity to make a *Terry* stop.  "A law enforcement official may effect a brief investigatory stop

of an individual if the official has a reasonable suspicion, grounded in specific and articulable

facts, that a person . . . was involved in or is wanted in [connection] with a completed felony."

*Bailey*, 622 F.3d at 5 (internal quotation marks omitted) (citing *United States v. Abdus-Price*, 518

F.3d 926, 929 (D.C. Cir. 2008).  In this case, the officers observed Maurice Williams leave 5318

9th Street NW, where they had previously observed customers engage in narcotics transactions

and depart those premises with narcotics.  While following him, they also observed Maurice

Williams repeatedly looking in his rear view mirror to check whether he was still being followed

and pull his car to a temporary stop to let the police vehicle pass in what could be interpreted as

an evasive maneuver.  Finally, they observed him make gestures indicating that he was removing

items from his jacket to the center console of the car when the police stopped him.  These

observations are sufficient to establish articulable suspicion to believe that Maurice Williams

was involved in the same type of activity as the other customers who had been observed during

the prior surveillance leaving 5318 9th Street NW to justify a stop for a *Terry* contact.  *See*

*Bailey*, 622 F.3d at 5-6 (officers were justified in conducting *Terry* stop of defendant, who was

observed talking to a suspected drug dealer at same place and same time as suspected drug

dealing, and subsequently drove car quickly in and out of an alley after suspected supplier

arrived).

### 2.      Legality of the Vehicle Search on October 21, 2011

The government contends that the search of defendant Maurice Williams' vehicle on

October 21, 2011 was justified under the "automobile exception" because "there was probable

cause to believe [the car] contained contraband."  Gov't Resp. to Def. Maurice Williams' Mot.

to Suppress, ECF No. 36, at 5-6.  The Court finds that the automobile exception to the warrant

requirement applies and the officers had probable cause, which justified a search of Maurice

Williams' car.[6]

Pursuant to the "automobile exception," authorities may conduct a warrantless search of a

motor vehicle "[i]f a car is readily mobile and probable cause exists to believe it contains

contraband."  *United States v. Maynard*, 615 F.3d 544, 567 (D.C. Cir. 2010) (quoting

*Pennsylvania v. Labron,* 518 U.S. 938, 940 (1996)); *see also United States v. Lawson*, 410 F.3d

735, 740-41 (D.C. Cir. 2005) ("If authorities have probable cause, they may either conduct an

immediate search or remove the vehicle to a police station . . . .");  *Carroll v. United States,* 267

U.S. 132 (1925).  "If probable cause justifies the search of a lawfully stopped vehicle, it justifies

the search of every part of the vehicle and its contents that may conceal the object of the search."

*United States v. Ross*, 456 U.S. 798, 825 (1982); *see also California v. Acevedo*, 500 U.S. 565,

580 (1991 ("The police may search an automobile and the containers within it where they have

---

[6] Since the ruling is based on this ground, the Court does not consider the alternative ground proffered by the government that law enforcement could search the vehicle under the "search incident to arrest" exception.  Gov't Resp. to Def. Maurice Williams' Mot. to Suppress, ECF No. 36, at 5.

probable cause to believe contraband or evidence is contained.").  The question in this case is
whether (1) the police officers had probable cause to search the car, and (2) whether the search of
the car could include the center console.

> a.    **Officers Had Probable Cause to Search the Vehicle**

Probable cause is "an objective standard requiring an analysis of the totality of the
circumstances and the facts known to the officers at the time of the search."  *United States v.
Jackson*, 415 F.3d 88, 91 (D.C. Cir. 2005).  Law enforcement officers' subjective intentions
"play no role in ordinary, probable-cause Fourth Amendment analysis, and the officers' actual
motives for conducting the search are not relevant as long as their actions were objectively
reasonable."  *Id.* (internal quotation marks and citations omitted).  Analogous to the facts in this
case, courts have previously held that officers had probable cause to search a vehicle when they
could smell marijuana.  *See United States v. Turner,* 119 F.3d 18, 20 (D.C. Cir. 1997) (finding
probable cause to search vehicle when there was the "smell of burnt marijuana emanating from
the car, the pieces of torn cigar paper arrayed around [the defendant], and the ziplock bag of
green weed material found on the floor behind his seat."); *United States v. Jackson,* 167 F. App'x
812, 813 (D.C. Cir. 2005) ("[T]he smell of burnt marijuana emanating from the vehicle provided
probable cause to justify the agents' search of the vehicle [the defendant] was driving."); *United
States v. Lovelace*, 357 F. Supp. 2d 39, 44 (D.D.C. 2004) (stating that, among other factors,
officers "detected the smell of marijuana, which clearly gave rise to at least reasonable suspicion,
if not probable cause, that a crime was being committed"); *see also United States v. Vasquez-
Castillo*, 258 F.3d 1207, 1213 (10th Cir. 2001) ("When an officer encounters the smell of raw
marijuana, there is the fair probability that the vehicle is being used to transport marijuana and
that the marijuana has been secreted in places other than the passenger compartment.") (citation

and quotation marks omitted); *Minnick v. United States*, 607 A.2d 519, 525 (D.C. 1992) ("The question for this court is an easy one: did [detectives] have probable cause to believe that drugs were to be found inside [the defendant's] car?  The odor of PCP noticed by both detectives provides a clear answer to that question.  This court has repeatedly found probable cause to search an automobile based, at least in part, on an officer's recognition of the smell of drugs . . . . While none of our earlier cases involved a situation in which the distinctive smell of a drug alone provided police officers with probable cause to search, we have no difficulty reaching that conclusion here.").

Furthermore, in a 2001 opinion, the D.C. Circuit wrote that "this Court recognizes that 'furtive' gestures in response to the presence of the police can serve as the basis of an officer's reasonable suspicion."  *United States v. Edmonds*, 240 F.3d 55, 61 (D.C. Cir. 2001); *see also United States v. Wright*, 565 F.2d 486, 488 n.3 (8th Cir. 1977) (noting that "furtive gestures" could constitute "suspicious behavior").

In this case, the totality of circumstances created probable cause.  The officers had previously observed drug transactions at Maurice Williams' home, from which he initiated his trip on October 21, 2011.  As in *Edmonds*, where the defendant's reaching under the seat as he saw police approach in an apparent attempt to conceal something contributed to raising the level of suspicion, in this case, after Maurice Williams was stopped by police, the officers witnessed him moving objects from his jacket into the car's center console.  *See Edmonds*, 240 F.3d at 61-62; Tr. at 14, lines 16-18.  Finally, as the officers approached the car, they smelled "a strong scent of fresh marijuana[.]"  Tr. at 15, lines 20-23.

b.      **Scope of the Vehicle Search**

In *United States v. Ross*, 456 U.S. 798 (1982), the Supreme Court held that the "scope of a warrantless search of an automobile . . . is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *Id.* at 824.  "If probable cause justifies the search of a lawfully stopped vehicle," the Court stated, "it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id.*; *see also Acevedo*, 500 U.S. at 580; *Turner*, 119 F.3d at 20.

In this case, the officers observed Maurice Williams place items inside of the center console, along with smelling marijuana.  In these circumstances, the officers had probable cause to believe that contraband may have been in the center console of the defendant's vehicle. *See id.* (finding officers had probable cause to search locked trunk of a car after smelling burning marijuana in the car).

Accordingly, the Court concludes that the stop and subsequent search of Maurice Williams' car on October 21, 2011 was legal and his motion to suppress evidence from the search on that day, ECF No. 22, will be DENIED.

B.      **Motion to Suppress Evidence from Automobile Search on February 1, 2012**

The Court now turns to defendant Maurice Williams' second pending motion to suppress marijuana and cocaine recovered during a warrantless search of his car on February 1, 2012, shortly after he was arrested in this case.[7]  Def.'s Mot. to Suppress, ECF No. 42.  Although he is

---

[7] At the suppression hearing, counsel for defendant Maurice Williams raised the issue that the government had failed to respond to his subpoena for the property receipt of Maurice Williams' belongings taken following his arrest on February 1, 2012.  Tr. at 4, lines 22-25; *id.* at 5, lines 18-19; *id.* at 6, lines 8-13.  Counsel argued that this receipt was necessary for effective cross-examination of Officer Thompkins. *Id.* at 37, lines 1-5.  Hearing testimony established that the keys were confiscated from Maurice Williams at the time of arrest and put into a property bag. *Id.* at 61, lines 18-25.  These keys were subsequently removed from the bag, at which time Officer Thompkins determined the blue sedan to be parked in front of the police station. *Id.*  The timing of when the blue sedan was located by police was not made clear by the testimony. *Compare id.* at 61, lines 18-19 (Officer Thompkins says "[i]t would be after the interview [of Maurice Williams].""), *with id.* at 65, lines 21-22 (Officer Thompkins says "during the interview [of

not charged with the drugs found during this search, the government has moved to admit this evidence under Federal Rule of Evidence 404(b), as discussed *infra*.  Gov't Mot. to Admit Other Crimes Evid., ECF No. 34, at 6.

As a threshold matter, evidence sought to be admitted pursuant to Rule 404(b) is subject to Fourth Amendment challenge.  *See United States v. Askew,* 88 F.3d 1065, 1072 (D.C. Cir. 1996); *United States v. Knight,* 185 F. Supp. 2d 65, 68 (D.D.C. 2002) (noting that the D.C. Circuit in *Askew* "appeared to assume – without analysis – that the exclusionary rule might bar 404(b) evidence"); *see also United States v. Campbell*, 609 F. Supp. 2d 674, 683 (E.D. Mich. 2009) (collecting cases where "courts have addressed the question of whether the Fourth Amendment's exclusionary rule applies to 404(b) evidence" and noting that "all of those courts agree that it does, at least under certain circumstances."); *United States v. Bailey*, No. 08-026, 2008 U.S. Dist. LEXIS 48214 (N.D. Okla. June 24, 2008) (granting Motion to Suppress 404(b) evidence because government did not meet its burden of proving by a preponderance of evidence that the cocaine at issue would have been discovered independently of the unlawful search of the defendant's pocket).

The government contends that the evidence seized on February 1, 2012 is admissible under Federal Rule of Evidence 404(b), since under the automobile exception, the warrantless search of Maurice Williams' car on February 1, 2012, was valid.  Gov't Resp. to Def. Maurice Williams' Mot. to Suppress, ECF No. 43, at 2.  The government argues that there was probable cause to conduct the search because officers smelled the odor of fresh marijuana through a

---

Maurice Williams] we located the blue sedan.").   However, the government does not seek to justify the search of the car as a search incident to arrest, which must be executed contemporaneous with the arrest. *See* Gov't Resp. to Mot. to Suppress, ECF No. 43, at 2; *see also Arizona v. Gant*, 556 U.S. 332, 351 (2009).  Rather, the government relies upon the automobile exception, which has no temporal limitations that would be implicated by the facts of this case. *See* Gov't Resp. to Def. Maurice Williams' Mot. to Suppress, ECF No. 43, at 2; *see also Lawson*, 410 F.3d at 741.  Therefore, the Court is not persuaded that the receipt was necessary to an effective cross-examination.

partially opened window of the vehicle and confirmed their suspicions when a drug-sniffing dog alerted to the vehicle.  *Id.*  The Court agrees.

As noted, the law is absolutely clear that law enforcement authorities may conduct a warrantless search of a motor vehicle "[i]f a car is readily mobile and probable cause exists to believe it contains contraband."  *Maynard*, 615 F.3d at 567 (quoting *Pennsylvania v. Labron,* 518 U.S. 938, 940 (1996)); *see also Lawson*, 410 F.3d at 740-41; *Carroll,* 267 U.S. 132 (1925).  The fact that the car subject to the search on February 1, 2012 was parked and inaccessible to defendant Maurice Williams, who was already under arrest at the time the search was executed and had turned over the car keys to the police, does not render the automobile exception inapplicable.  *See Olaniyi v. District of Columbia*, 763 F. Supp. 2d 70, 103-104 (D.D.C. 2011) (applying automobile exception when evaluating qualified immunity claim to justify warrantless search of vehicle when occupants were already in police custody) (citing *United States v. Young*, 371 F. App'x. 358, 361 (4th Cir. 2010) ("[T]he inherent mobility of the [van], combined with the lesser expectation of privacy in an automobile as compared to a home or office, justify application of the exception even if the police have control over the automobile at the time of the warrantless search."); *California v. Carney*, 471 U.S. 386, 391 (1985) ("Even in cases where an automobile [is] not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justifie[s] application of the vehicular exception.")).  Thus, the Court proceeds to determine whether the officers had probable cause to conduct the warrantless search on February 1, 2012.

As discussed *supra*, the D.C. Circuit has previously held that officers had probable cause to search a vehicle when they could smell marijuana.  *Turner,* 119 F.3d at 20 (finding probable cause to search vehicle when there was the "smell of burnt marijuana emanating from the car, the

pieces of torn cigar paper arrayed around [the defendant], and the ziplock bag of green weed material found on the floor behind his seat"). Moreover, this Circuit has also indicated that an alert from a drug-sniffing dog can create probable cause. *United States v. Maddox*, 398 F. App'x 613, 613 (D.C. Cir. 2010) ("The reliable informant's reports and the police officer's corroboration of those reports provided reasonable suspicion to briefly detain Maddox's car, and the narcotics-detection dog's alert provided probable cause for the search.") (citing *Illinois v. Caballes,* 543 U.S. 405, 409 (2005)); *see also United States v. Tartaglia*, 864 F.2d 837, 841-42 (D.C. Cir. 1989).

In this case, officers connected the car with Maurice Williams through the key fob taken from him at the time of his arrest, smelled fresh marijuana, and confirmed their suspicion the car might contain drugs with a trained narcotics dog. Thus, there was probable cause to support a warrantless search of Maurice Williams' vehicle. For these reasons, defendant Maurice Williams' motion to suppress evidence seized on February 1, 2012 will be DENIED.

**C.    Motion to Admit Evidence from Automobile Search on February 1, 2012 Pursuant to Federal Rule of Evidence 404(b)**

The Court now turns to the government's related motion to admit evidence of defendants Ronald and Maurice Williams' prior criminal conduct. Gov't Mot. to Admit Other Crimes Evid., ECF No. 34. With respect to Ronald Williams, the government sought to introduce evidence of two prior convictions: a 1997 conviction for attempted distribution of cocaine and a 2000 conviction for attempted possession with intent to distribute cocaine. *Id.* at 4-6. The Court granted the government's motion with respect to Ronald Williams' convictions at the hearing held on July 3, 2012, and reserved judgment as to Maurice Williams pending a decision on defendant Maurice Williams' related Motion to Suppress evidence seized from his automobile on February 1, 2012. Pending before the Court is the government's motion with respect to Maurice

Williams, in which the government seeks to introduce evidence of uncharged criminal conduct, namely, his possession of narcotics at the time of his arrest on February 1, 2012. *Id.* at 6.

Defendant Maurice Williams objects to the admissibility of the illegal narcotics under Rule 404(b) on grounds that he "has never been charged or convicted of the drugs found in the car on February 1, 2012," and that admission of this evidence "will create another trial within the trial," forcing him to defend against both the charges in the indictment and the evidence of the drugs in the car, which would result in unfair prejudice under Rule 403. Def. M. Williams' Opp. to Mot. to Admit Other Crimes Evid., ECF No. 41, at 2.

Under Federal Rule of Evidence 404(b), evidence of a "crime, wrong, or other act" is "not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). However, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2).

The D.C. Circuit has pointed out that "[a]lthough the first sentence of Rule 404(b) is framed restrictively, the rule itself is quite permissive, prohibiting the admission of other crimes evidence in but one circumstance—for the purpose of proving that a person's actions conformed to his character." *United States v. Bowie*, 232 F.3d 923, 929-30 (D.C. Cir. 2000) (citations and quotation marks omitted). In short, "Rule 404(b) is a rule of inclusion rather than exclusion." *Id.* at 929. Even if evidence may be admissible under Rule 404(b), however, the Court must continue its analysis. The D.C. Circuit has instructed that "[c]ompliance with Rule 404(b) does not itself assure admission of the other crimes evidence. If the defendant moves under Rule 403, the court may exclude the evidence on the basis that it is unfairly prejudicial, cumulative or the

like, its relevance notwithstanding." *Id.* at 930 (citation and quotation marks omitted).  "This two-step analysis—certification of a proper and relevant purpose under Rule 404(b), followed by the weighing of probity and prejudice under Rule 403—is firmly rooted in the law of this circuit." *United States v. Miller*, 895 F.2d 1431, 1435 (D.C. Cir. 1990); *see also United States v. Sitzmann*, No. 08-0242, 2012 WL 1345713, at *4 (D.D.C. Apr. 13, 2012) (applying the two-step analysis described in *Miller*).

In evaluating the admissibility of evidence under Rule 403, the Court is cognizant that this Rule "does not bar powerful, or even prejudicial evidence.  Instead, the Rule focuses on the danger of *unfair* prejudice, and gives the court discretion to exclude evidence only if that danger *substantially* outweigh[s] the evidence's probative value." *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) (quotation marks and citations omitted) (emphasis and brackets in original).

This Circuit has allowed evidence of uncharged crimes to be introduced as relevant to proving knowledge and intent particularly if the uncharged crimes involve a similar type of offense.  For example, in *United States v. Bowie*, 232 F.3d 923, 926 (D.C. Cir. 2000), the defendant was arrested and charged with possession of counterfeit currency for his possession on May 16, 1997.  The District Court admitted evidence that the defendant was also arrested on April 17, 1997, for the same offense, though not charged for possession on that day. *Id.* at 927. The Circuit Court found that the uncharged criminal conduct evidence was properly admitted because its probative value outweighed its prejudicial effect. *Id.* at 933.

Similarly, defendant Maurice Williams' uncharged possession of marijuana and cocaine on February 1, 2012 involves the same two narcotics he is charged with possessing on October 21, 2011.  In addition, the marijuana was discovered in the same location in the two vehicles, the

center console, on both occasions.  Thus, the evidence seized on February 1, 2012 has substantial

probative value that outweighs any prejudicial effect, and the government will be permitted to

present this evidence.  For these reasons, the government's Motion to Admit Other Crimes

Evidence Pursuant to Federal Rule of Evidence 404(b), ECF No. 34, will be GRANTED.

### D.    Oral Motion to Suppress Statement Made on February 1, 2012

Finally, the Court turns to defendant Maurice Williams' oral motion stated on the record

at the suppression hearing to suppress a statement he allegedly made at the time of his arrest on

February 1, 2012 that he had been "dropped off" at the police station.  Tr. at 91, lines 18-24; *id.*

at 93, line 25; *id.* at 94, lines 1-2.  The government conceded that this statement was made before

Maurice Williams was advised of his *Miranda* rights and was given in response to a police

question of how he had arrived at the station.  *Id.* at 96, lines 4-17.

The requirements of *Miranda* apply only when there is a custodial interrogation.  *United

States v. Vinton*, 594 F.3d 14, 26-27 (D.C. Cir. 2010).  A custodial interrogation is "questioning

initiated by law enforcement officers after a person has been taken into custody or otherwise

deprived of his freedom of action in any significant way."  *Miranda,* 384 U.S. at 444.  For

*Miranda* to apply, the defendant must be in custody and an interrogation must be taking place.

*Vinton,* 594 F.3d at 26 ("*Miranda* warnings are required 'where a suspect in custody is subjected

to interrogation.'") (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980)).

Since defendant Maurice Williams was under formal arrest at the time he made the

statement in question, it is clear that the custodial prong of the test is met.  *See United States v.

Gaston*, 357 F.3d 77, 82 (D.C. Cir. 2004) ("The ultimate inquiry . . . is simply whether there is a

formal arrest or restraint on freedom of movement of the degree associated with a formal

arrest.") (internal quotation marks and citations omitted).

Therefore, the issue turns on whether the defendant was subject to interrogation.  The test is whether the police action was "reasonably likely to elicit an incriminating response[.]"  *United States v. Morton*, 391 F.3d 274, 276 (D.C. Cir. 2004) (quoting *Rhode Island v. Innis,* 446 U.S. 291, 301 (1980)).  The statement was concededly given in response to a direct question by police.  The government argues, however, that it should not be suppressed because it was made while the suspect was being processed for arrest, thus falling within the "booking question" exception.  Tr. at 93, lines 9-13.

The Supreme Court and this Circuit have held that "officers asking routine booking questions 'reasonably related to the police's administrative concerns' are not engaged in interrogation within *Miranda*'s meaning and therefore do not have to give *Miranda* warnings." *Gaston*, 357 F.3d at 82 (quoting *Pennsylvania v. Muniz,* 496 U.S. 582, 601–02 (1990)).  In *Gaston*, the defendant's house was searched pursuant to a warrant.  *Id.* at 80-81.  While he was handcuffed, but before he was given his *Miranda* warnings, the defendant was asked for his name, address, date of birth, social security number, and whether he owned the house being searched.  *Id.*  The Court rejected the defendant's argument that his statement regarding ownership of the house should be suppressed, holding that his "address and ownership interest in the house . . . related to administrative concerns" because officers are required to give a copy of the warrant and a receipt for property seized to the person from whom that property was taken. *See id.* at 82 (internal quotation marks and citations omitted).

By contrast, in *United States v. Peterson*, 506 F. Supp. 2d 21, 24-25 (D.D.C. 2007), the court found that, while questions about the defendant's ownership of the apartment fell within the booking exception, his answer to the question about which bedroom he used did not, and therefore that statement was suppressed.  The court noted the contrast between "the types of

identifying and administrative information" that routine booking questions elicit, and the question about which bedroom was occupied by the defendant, which "is more plausibly construed as . . . intended to determine whether defendant could be connected to any evidence of a crime found in the apartment." *Id.* at 25.

In this case, asking Maurice Williams how he had arrived at the police station falls outside the routine identifying questions contemplated by the booking question exception.  His mode of transportation on that particular day is not a personal identifying characteristic, nor was his answer necessary to serve a required property seizure receipt.  The government seeks to use the fact that the question was asked during the booking process to automatically make this a booking question.  Tr. at 96, lines 11-17.  However, the mere timing of the question is insufficient to make it a legitimate booking question, and the Court finds that the question was not "reasonably related to the police's administrative concerns."  *See Gaston*, 357 F.3d at 82. Though the police may not have been fully aware at the time it was asked, the question also relates directly to Maurice Williams' connection with evidence of criminal activity, and therefore will be suppressed because he had not yet been advised of his rights.  Accordingly, defendant Maurice Williams' motion to suppress the statement will be GRANTED.[8]

## IV.    CONCLUSION

For the reasons stated above, the Court will DENY defendant Maurice Williams' Motions to Suppress physical evidence seized on October 21, 2011 and February 1, 2012, ECF Nos. 22, 42; GRANT the Motion to Suppress the single statement defendant Maurice Williams allegedly made at the police station that he got "dropped off" at the station; and GRANT the government's Motion to Admit Other Crimes Evidence Pursuant to Federal Rule of Evidence

---

[8] The Court notes that statements that are suppressed for "violating the strictures of *Miranda* are admissible for impeachment if their trustworthiness . . . satisfies legal standards."  *United States v. Murdock*, 667 F.3d 1302, 1305 (D.C. Cir. 2012) (quoting *Mincey v. Arizona*, 437 U.S. 385, 397-98 (1978) (internal quotation marks omitted)).

404(b) with respect to Maurice Williams.  An Order consistent with this Memorandum Opinion will be issued.

**Date**:  July 20, 2012

/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge